OPINION
This is a custody case which stems from a decree of divorce entered on April 27, 1994. At that time, and pursuant to a joint request, the plaintiff, Patricia Goetze, and the defendant, Karl Goetze, filed a shared parenting plan regarding their parental rights and responsibilities in the care of their two children, Dylan, who was born on April 9, 1990, and Damon, who was born on May 17, 1991.
Thereafter, on June 26, 1995, Patricia Goetze filed a motion for sole custody of the children, and after a three-day hearing before a magistrate, or on October 9, 1996, the magistrate issued a decision in which he found that termination of the shared parenting plan was appropriate due to the fact that Karl Goetze resided in California while Mrs. Goetze resided in Ohio, and that the involvement and visitation envisioned by the shared parenting plan was not feasible. The magistrate also found that an award of custody to Patricia Goetze was in the best interests of the children.
However, the trial court rejected the recommendation of the magistrate on the ground that the plaintiff had not demonstrated a change of circumstances (R.C. 3109.04), but the judgment of the trial court was reversed by this court for the reason that a change of circumstances was not indispensable to the termination of a shared parenting plan. Goetze v. Goetze (March 27, 1998), Montgomery App. No. 16491, unreported.
Upon remand of the case to the trial court, the cause was again referred to a magistrate who found once again that Patricia Goetze should have sole custody of Dylan and Damon Goetze. However, the defendant again filed objections to the findings of the magistrate, and in a comprehensive and detailed analysis of the evidence, the trial court again found that the shared parenting plan should be terminated and that an award of custody to the defendant, with liberal visitation for the plaintiff, was most appropriate.
In the present appeal from the custody order thereupon entered on September 17, 1999, Mrs. Goetze has set forth two assignments of error, the first of which has been stated as follows:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO CONSIDER THE PARTIES ON EQUAL STANDING IN AWARDING CUSTODY.
During the initial appearance of this case, this court emphasized that the parties upon remand should have equal standing relative to the custody of the children. Specifically, we noted that "if the court finds termination of the plan appropriate, the court then must proceed with an allocation of parental rights as if making the allocation for the first time." And upon remand of the case, the trial court not only alluded to the comment of the appellate court, but also expressly recognized its obligation to make a new custody allocation "as if no request for shared parenting even had been made." R.C. 3109.04(E)(2)(d). In fact, there is nothing in the record to suggest that the trial court was not fully aware that custody was to be determined ab initio
after the termination of joint custody. See, Blair v. Blair
(1986), 34 Ohio App.3d 345. Hence, the first assignment of error, although stated somewhat differently, is really directed to the weight and sufficiency of the evidence presented to support the award of custody.
In this regard, the nature of the evidence, as well as the difficulty in choosing a residential parent, are reflected in an observation of the trial court that "the children in this case are fortunate to have two loving parents and several family members who wish to be a significant part of their lives."
Furthermore, the differing views of the trial court and its magistrate suggests, at least, that the overall evidence is almost in equipoise, but under such circumstances, the ultimate responsibility for and the final determination of what was in the best interests of the children rested exclusively with the domestic relations court. See, Inman v. Inman (1995), 101 Ohio App.3d 115.
Here, the record provides no basis for concluding that the trial court decided the determinative custody issue without a conscious regard for the factors enumerated in R.C. 3109.04(C), and it is fundamental, of course, that this court may not interfere with a decision which is based upon some credible and competent evidence. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21. Where the evidence is susceptible of more than one construction, a reviewing court is bound to give it that interpretation which is consistent with the order of the trial court. See, Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77.
No useful purpose would be served by any discussion of the evidence relied upon by either Patricia or Karl Goetze to show that they are in the better position to serve the best interests of Dylan and Damon. In fact, an award of custody to one or the other hardly could be said to be an "abuse of discretion" as that term is defined in law. See, Blakemore v. Blakemore (1983),5 Ohio St.3d 217. See also, Masters v. Masters (1994), 69 Ohio St.3d 83; Donovan v. Donovan (1996), 110 Ohio App.3d 615. Indeed, uncertainty is inherent in the placement of children, and for obvious reasons, this court may not merely substitute its opinion of that of the trial court. Trickey v. Trickey (1952), 158 Ohio St. 9.
Accordingly, the state of the evidence, being such as to preclude any interference from a reviewing court, and the trial court, having expressed a complete awareness of its obligation "to consider the parties on equal footing," the first assignment of error is overruled.
The second assignment of error has been presented by the appellant as follows:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO CONSIDER THE IN CAMERA INTERVIEW OF THE CHILD.
In the present case, Mrs. Goetze requested that the trial court conduct an in camera interview of Dylan and Damon, and pursuant to R.C. 3109.04(B)(2)(b), the magistrate determined that the older of the children, Dylan, had sufficient reasoning ability to express his wishes and concern with respect to the allocation of parental rights and responsibilities. Thereafter, Dylan's wishes, which were favorable to his mother, were considered by the magistrate in the ultimate determination of the issue of custody.
Subsequently, however, the trial court concluded, without a personal interview of the child, that it was not in Dylan's best interest to require him to express his concerns and wishes. Specifically, the trial court observed as follows:
 The trial court agrees with defendant's contention that the magistrate placed too much weight on the interview with Dylan. At the time of the interview, Dylan was eight years old. Given the child's young age, the conflict between the parents surrounding the custody proceedings, the appointment of a guardian ad litem, the presence of psychological reports and recommendations, and the lack of circumstances necessitating his factual viewpoint, the court finds as an initial matter that it was not in Dylan's best interest to ask him to express his concerns and wishes, as it undoubtedly placed unnecessary stress on the child. Although the interview with Dylan may have been found to contain information relevant to the custody determination, the interview was only one factor to be considered."
In support of the assigned error, the appellant argues that the trial court failed to journalize the "special circumstances" required by R.C. 3109.04(B)(2)(b) upon a finding that it would not be in the best interests of a child to determine the child's wishes and concerns with respect to the allocation of custody.
However, given the serious conflict between the parents in this case, as found by the trial court, and given the stressful situation which undoubtedly emanated from placing Dylan in the middle of the controversy, as found by the court, the record does portray some "special circumstances" and distinctive characteristics. And in the final analysis, it was within the trial court's discretion as to whether to allow the testimony of Dylan regarding custody. See, Wade v. Wade (1983), 10 Ohio App.3d 167.
Moreover, the trial court properly noted that the propriety of insisting upon Dylan's testimony was dependent upon necessity. As reiterated by this court in Bell v. Bell (June 5, 1998), Clark App. No. 97-CA-105, unreported, "children have certain rights, including the right to love each parent without feeling guilt, pressure, or rejection, * * * [and] the right to have a positive and constructive on-going relationship with each parent." Id. at p. 1.
Furthermore, the trial court expressly found that the interview with Dylan was not deserving of persuasive weight when considered with other factors. And upon the record as a whole, therefore, the second assignment of error must be overruled.
Finding neither of the alleged errors to be well made when tested by the applicable standard of review, the judgment of the Domestic Relations Court will be affirmed.
 ____________________________ KERNS, J.
GRADY, P.J., and WOLFF, J., concur.
(Hon. Joseph D. Kerns, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).